O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| GAIL MARIE WRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. CV 16-06203-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Gail Marie Wright ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///
///

---

[1] On January 21, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff initially filed applications for DIB and SSI benefits in 2010. See Administrative Record ("AR") 16. After those applications were denied, Plaintiff requested and received a hearing before an administrative law judge ("ALJ"), who issued an unfavorable decision finding Plaintiff not disabled on March 19, 2012. See AR 116-35. The Appeals Council denied review of that decision, and it became final. See AR 16. Shortly after the ALJ's March 19, 2012, decision became final, Plaintiff re-applied for DIB and SSI alleging disability beginning March 20, 2012. See AR 220-27. Her re-applications were denied on December 11, 2013. See AR 136-71. Plaintiff requested another hearing, which took place on October 23, 2014. See AR 81-115. The same ALJ heard testimony from Plaintiff, who was represented by counsel, a vocational expert ("VE"), and Plaintiff's therapist. See AR 16.

In a written decision issued December 2, 2014, the ALJ denied Plaintiff's second round of applications. See AR 13-34. He found that Plaintiff did not engage in substantial gainful activity after March 19, 2012, and met the special earnings requirements for DIB through September 30, 2013. See AR 20. The ALJ found that there was a change in circumstances indicating greater disability after March 19, 2012. See AR 20 n.3. The ALJ thus determined that there was no presumption of continuing non-disability under Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988). See AR 20.

The ALJ determined that Plaintiff had the medically-determinable severe impairments of asthma, history of gallstones, hernia, obesity, and major depressive disorder with psychotic features. See AR 20, 22. However, he found that her impairments did not equal the severity of a listed impairment. See id. He also found that Plaintiff retained the residual functional capacity ("RFC") to perform the demands of light work with the following limitations:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 6 hours and can sit for 6 hours in an 8 hour day, with normal break. She can push and pull without significant limitations. She cannot be exposed to excessive dust and fumes. [Plaintiff] is limited to occasional detailed tasks. She is also limited to occasional contact with coworkers, supervisors, and the public. She has no other limitations.

AR 24 (citing 20 C.F.R. §§ 404.1567, 416.967).

The ALJ found that Plaintiff was not capable of performing her past relevant work as a mail carrier, home care provider, and medical billing clerk. See AR 28. Based on the VE's testimony, the ALJ concluded that Plaintiff could perform the work of a bench assembler, bottling line attendant, and inspector hand packager. See AR 28. Therefore, the ALJ concluded that Plaintiff was also not disabled after March 19, 2012. See AR 29.

Plaintiff requested review of the ALJ's decision. See AR 11-12. On June 20, 2016, the Appeals Council denied review. See AR 1-7. This action followed.

## II.
## DISCUSSION

The parties dispute whether the ALJ properly rejected the opinion of treating physician Dr. Thaddeus Juarez. See Joint Stipulation ("JS") at 6.

### A. Relevant Facts

Dr. Juarez treated Plaintiff between April 8, 2013, and January 26, 2015. See, e.g., AR 555, 558, 561, 564, 567, 569, 857, 859. On October 1, 2014, he completed a mental RFC for Plaintiff diagnosing her with a severe major depressive disorder with psychosis. See AR 852. He opined that Plaintiff would be off-task more than 30% of the time, could work on a sustained basis

3

less than 50% of the time, would miss five or more days per month due to her impairments, and had a Global Assessment Functioning ("GAF") score of 42. See AR 855. Dr. Juarez also determined that Plaintiff's mental impairment would preclude performance for 5% of an eight-hour workday because of requesting assistance and getting along with coworkers without distracting them. See AR 853. It would preclude performance for 10% of an eight-hour workday because of remembering locations and work-like precautions, carrying out simple instructions, working in proximity with others without distracting them, maintaining socially-appropriate behavior, being aware of normal hazards and taking appropriate precautions, setting realistic goals or making plans independently of others, and traveling in unfamiliar places or using public transportation. See AR 853-54. It would preclude performance for 15% of an eight-hour workday because of understanding and remembering both simple and detailed instructions, carrying out detailed instructions, concentrating for extended periods of time, performing activities within a schedule, sustaining an ordinary routine without special supervision, making simple work-related decisions, completing a normal workweek without interruptions, interacting with the public, responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting. See id.

When formulating Plaintiff's RFC, the ALJ gave little weight to Dr. Juarez's assessment that Plaintiff's mental limitations would preclude performance of most mental abilities for at least 10-15% of an eight-hour workday because "it [wa]s inconsistent with Dr. Juarez's own treating notes and the overall record." AR 26. The ALJ noted that most of Plaintiff's significant mental symptoms "occurred during periods of noncompliance with treatment." Id. For example, the ALJ noted that Plaintiff received a GAF score of 55 and an excellent prognosis for improvement when complying with

mental health treatment in September 2012. See id. Yet when she ran out of medication, she reported increased auditory hallucinations. See id. The ALJ further considered that Plaintiff's partial compliance in mid-2013 improved her mood and decreased her auditory hallucinations. See id. During the second half of 2013, Plaintiff reported frequent noncompliance for two weeks to one month at a time, which coincided with increased auditory hallucinations and depression. See AR 27. Her overall condition improved within days of compliance. See id.

In contrast, the ALJ credited the opinion of state-agency psychiatric consultant Dr. R. E. Brooks, who reviewed Plaintiff's records and provided a mental RFC assessment in December 2013. See AR 150. Dr. Brooks found that Plaintiff had no more than mild limitations in concentration, persistence, and pace. See AR 22-23, 27; see also AR 145, 150. The ALJ explained that "[a]lthough [Plaintiff] has sometimes presented with more significant symptoms [in concentrations, persistence, or pace], those symptoms have occurred when [Plaintiff] has been noncompliant with her treatment regimen." AR 27.

**B.   Applicable Law and Analysis**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).[2] A treating

---

[2] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment);

5

physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).

Here, Dr. Juarez's opinion conflicted with Dr. Brooks's opinion, requiring the ALJ to give specific and legitimate reasons that are supported by substantial evidence in the record for giving little weight to the treating physician's opinion. The record shows that the ALJ did so. First, the ALJ found that Dr. Juarez's opinion was inconsistent with his own treatment notes. See AR 26. In particular, Plaintiff's record shows a pattern of improvement when compliant and relapse when noncompliant. Dr. Juarez noted on several occasions that Plaintiff's symptoms dissipated when she was compliant with

---

Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 15-05925, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); cf. Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010, 58011 (Nov. 19, 2001) ("With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."). Accordingly, the Court applies the versions of 20 C.F.R. §§ 404.1527 and 416.927 that were in effect at the time of the ALJ's December 2014 decision.

6

treatment. See AR 567, 575, 577, 807, 813, 815, 857-58, 860, 1150-51. While she was noncompliant, he noted increased symptoms. See AR 555, 558-59, 561, 564, 573, 817, 819, 1174. For example, Dr. Juarez noted that Plaintiff had run out of oral medication one week before, and Plaintiff reported paranoia and hopelessness. See AR 811-12. Yet during a visit when Plaintiff had complied with treatment, Plaintiff reported that she felt very good, did not feel suicidal, and that the voices in her head had been quiet since she got her medicine. See AR 807. Similarly, Plaintiff had not taken medication for more than two weeks when she reported a depressed mood, irritability, auditory hallucinations, and reported seeing shadows. See AR 809.

A "[p]laintiff's noncompliance with her treatment regimen is a specific and legitimate reason for rejecting [a treating physician's] conclusions." Swinscoe v. Astrue, No. 10-01614, 2012 WL 2317550, at *6 (E.D. Cal. June 18, 2012); see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."). Here, Plaintiff repeatedly told her physician that "meds keep [the voice in her head] away," yet she consistently allowed treatment to lapse. AR 811; see also AR 807. Plaintiff does not suggest that her compliance issues could be related to her mental impairments or otherwise try to explain her frequent bouts of noncompliance. Dr. Juarez's opinion failed to take into account that Plaintiff's depressive disorder with psychotic features did not severely limit her when she adhered to treatment. Instead, his mental RFC appeared to address Plaintiff's symptoms only during noncompliance thus ignoring and conflicting with large portions of his own treatment notes.

Moreover, Dr. Juarez's assessment was inconsistent with his treatment notes written on the same date that he completed the assessment. For example, Dr. Juarez noted severe limitations in his October 1, 2014, mental RFC. See

7

AR 850-56. Yet his treatment notes from the same date describe Plaintiff as "friendly, calm, [and maintaining] good eye contact." AR 857. He also noted that her response to medication was good because it had "improved psychosis, negative voices, and mood." AR 858. The ALJ properly considered these inconsistencies when giving Dr. Juarez's opinion little weight.

The ALJ also found that Dr. Juarez's opinion was inconsistent with the overall record. See AR 26. Non-examining state-agency physician Dr. Brooks provided a mental RFC assessment on December 10, 2013, in which he opined that "there are no significant work-related limitations in the ability to sustain concentration/persistence/pace or otherwise adapt to the requirements of a normal work-setting." AR 152. Yet Dr. Juarez described Plaintiff as capable of working on a sustained basis less than 50% of the time. See AR 85. Dr. Juarez's opinion also conflicted with a report by treating physician Dr. Raymond Yee, who completed a report on September 4, 2012. See AR 580-84. Based on her generally positive mood, lack of reported delusions, and otherwise normal affect, Dr. Yee gave Plaintiff a GAF of 55 and deemed her prognosis excellent. See AR 584. He noted some depression, but not serious depression or psychosis such that it affected his overall assessment of Plaintiff's prognosis. See id. This conflicted with Dr. Juarez's account of Plaintiff's health as having serious depressive disorder with auditory hallucinations. Dr. Juarez's opinion was also inconsistent with Dr. Fakoory's review of psychiatric systems, which noted her normal findings, and that Plaintiff was "negative for hallucinations, depression and anxiety," and "calm and cooperative, shows good judgment and insight, memory is normal and mood is normal." AR 507-08.

Plaintiff claims that Dr. Brooks's opinion was made "without the benefit of Dr. Juarez's records and opinion and thus [was] not based on a complete medical assumption." JS at 12. Dr. Brooks based his opinion on many records,

8

including records from Pacific Clinics—Portals. See AR 140. In the Joint Stipulation, Plaintiff notes that the records upon which Dr. Brooks relied can be found in Exhibit 4F at AR 553-84. See JS at 12. Yet these are the records of Dr. Juarez. See AR 553-78. Plaintiff's argument is clearly meritless.

Additionally, Plaintiff argues that the ALJ should have limited Plaintiff to simple, repetitive tasks because Dr. Brooks noted her moderate limitation in carrying out detailed instructions. See JS at 12-13, AR 151-52. However, it is an ALJ's job, rather than any one specific doctor's job, to synthesize record evidence to determine the plaintiff's RFC. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). The ALJ was not required to mirror Dr. Brooks's distinction between no limitations for simple tasks and moderate limitations for detailed tasks. Rather, he was simply required to consider Dr. Brooks's findings in formulating Plaintiff's mental RFC, along with the opinions of the several other relevant physician opinions. The fact that the language used was not identical is irrelevant. Furthermore, even though Dr. Brooks noted that Plaintiff was "moderately limited" in her ability to carry out detailed instructions, he concluded that "there are no significant work-related limitations in the ability to . . . adapt to the requirements of a normal work-setting." AR 151-52. As Dr. Brooks himself did not suggest that Plaintiff should be limited to simple, repetitive tasks, Plaintiff's claim is groundless.

Finally, Plaintiff's argument that the ALJ failed to give a "complete medical hypothetical" to Dr. Brooks wrongly conflates the requirements of a VE with those of a non-examining physician. See JS at 12; Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (noting that an ALJ's hypothetical to a VE was proper because it contained all of the claimant's limitations that the ALJ found credible and that were supported by substantial evidence in the record). Here, an ALJ had not yet been assigned when Dr. Brooks examined Plaintiff,

making Plaintiff's claim an impossible one to have been implemented. Thus, there was no way for the ALJ to pose such a hypothetical to Dr. Brooks.

The ALJ provided specific and legitimate reasons, each of which was supported by substantial evidence in the record, for rejecting Dr. Juarez's opinion. Accordingly, remand is not warranted.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: January 3, 2018

DOUGLAS F. McCORMICK
United States Magistrate Judge